UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF FRESNO,<br><br>            Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>            Defendants. | No. 1:06-CV-1559-OWW-GSA<br><br>MEMORANDUM DECISION RE: DEFENDANT BOEING'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION OF THE CITY OF FRESNO'S RCRA CLAIM (Doc. 225) |

## I.  INTRODUCTION.

Defendant the Boeing Company now moves, pursuant to Federal Rule of Civil Procedure Rule 56, to dismiss the City's RCRA claim on the ground that the Court lacks subject matter jurisdiction over the claim under § 113(h) of CERCLA.  Alternatively, Boeing argues that the claim is moot because the activities the City seeks to enjoin are already underway, and because there is no imminent and substantial endangerment at OHF as required under RCRA.

The City opposes the motion, however, its opposition is limited to whether TCP presents an imminent and substantial endangerment under the RCRA framework.  The City abandons its RCRA cause of action with respect to its TCE and PCE allegations.  As to those substances the motion is GRANTED.

1

## II. **FACTUAL/PROCEDURAL BACKGROUND**.

This case involves a cost recovery/contribution action under CERCLA and related statutes, arising from the parties' continuing efforts to investigate and clean up Old Hammer Field ("OHF") in Northeast Fresno, a site presently occupied by the Fresno-Yosemite International Airport ("FAT").[1]  Pursuant to an interim cost sharing agreement dating back to 1993, the parties have funded the cleanup and remediation of contamination at the OHF.  One of those parties, the City, now claims that it has paid too much.

On November 2, 2006 the City commenced this civil action.  In March 2008, the action was stayed based on a reported settlement.  In March 2009, however, the City raised new allegations relating to a previously undisclosed contaminant at OHF, 1,2,3-trichloropropane ("TCP").  In April of 2009 the stay was lifted.  The City filed the second amended complaint on June 9, 2009 setting forth new allegations regarding the presence of TCP at OHF.

### A. *The United States' Related Motion*

On April 22, 2010, three days after Boeing filed its motion, the Court dismissed the City's RCRA claim against the United States

---

[1] The State of California, through its Department of Toxic Substances Control ("DTSC") and the Regional Water Quality Control Board ("RWQCB") ("State Agencies") has oversight over the cleanup. *City of Fresno v. United States*, --- F. Supp. 2d ----, 2010 WL 1662476 at 2 (E.D. Cal. 2010). The parties work together as the Old Hammer Field Steering Committee and have entered into multiple agreements since 1993, including a 1993 Cost-Sharing Agreement containing an interim allocation of costs and specification of remedial tasks to be performed. *Id*. The Steering Committee retained consultant ERM West, Inc. to perform the remedial work at OHF. *Id*.

on grounds that the City's evidence was insufficient to create a genuine dispute of material fact that CERCLA § 120 applies to the OHF cleanup and not § 104.  The claim was therefore barred under § 113.  Boeing argues that April 22, 2010 Memorandum Decision applies with equal force to the City's RCRA claim against it.

On April 23, 2007, Defendant United States moved for partial judgment on the pleadings or partial summary judgment on Plaintiff's RCRA claim and for partial judgment on the pleadings as to the HSAA claim.  The case was subsequently stayed for a settlement.  On April 17, 2009, the stay was lifted and Plaintiff was ordered to file an amended complaint.  (Doc. 122.)

Plaintiff filed a second amended complaint on May 18, 2009, advancing twelve causes of action, including claims under RCRA and HSAA.  (Doc. 123-3.)  Defendant United States filed a "Notice of Renewal of Pending Dispositive Motions" on August 7, 2009.  The unopposed motion was granted on August 12, 2009.

On August 20, 2009, the United States renoticed its motion for summary adjudication on Plaintiff's RCRA and HSAA claims.[2]  As to the City's RCRA claim, the United States argued that the claim failed for four reasons:

> (1) the court lacks subject matter jurisdiction over this claim pursuant to § 113(h) of CERCLA, (2) the claim is moot because the City is asking the court to engage in an idle act as the United States is in compliance with the remedial objectives of the DTSC pursuant to the RAP; (3) under the primary jurisdiction doctrine, the administrative forum provided by the State of California is the appropriate forum for resolution of the City's claims concerning the cleanup

---

[2] The United States' original motion was filed on April 23, 2007.  Oral argument was held on each round of briefing, the first on December 3, 2007, the second on March 22, 2010.

3

**of the OHF; and (4) there is no imminent and substantial endangerment at OHF as required by the RCRA framework.**

*City of Fresno v. United States*, --- F. Supp. 2d ----, 2010 WL 1662476 at 7 (E.D. Cal. 2010).

The City opposed the motion, arguing that summary adjudication was improper on its RCRA claim because the OHF cleanup proceeded under the authority of § 120, not § 104. The City also argued that a number of factual developments preclude summary judgment, chief among them that "the City has now determined that [...] TCP has leached into the City's water supply from OHF."

The United States' motion was granted on April 22, 2010 on grounds that the City's evidence was insufficient to create a genuine dispute of material fact that CERCLA § 120 applies to the OHF cleanup and not § 104:

> all the evidence points to the applicability of § 104: the language of the cooperative agreement; OHF is privately owned by the City of Fresno; OHF is not listed on the NPL; the EPA is not involved in the cleanup of OHF; and neither AVCRAD nor CANG is involved in any aspect of the OHF cleanup. Nor does the City explain the specific inclusion of E.O. 12580 and DERP in the cooperative agreement (as opposed to the language re: the authority of § 120 to cleanup AVCRAD and KANG).

*City of Fresno v. United States*, --- F. Supp. 2d ----, 2010 WL 1662476 at 14 (E.D. Cal. 2010).

As to the United States' other grounds for summary adjudication, i.e., imminent and substantial endangerment, mootness, and primary jurisdiction, it was reasoned:

> Because Defendant's summary judgment motion is barred by § 113(h) of CERCLA, it is unnecessary to resolve the issues concerning mootness, the primary jurisdiction doctrine, and whether the City has satisfied RCRA's

4

'imminent and substantial endangerment' requirement.

Assuming, arguendo, that § 113(h) does not bar the City's RCRA claim, it is unclear how the City demonstrates "credible evidence" to suggest than the current levels of TCP contamination create an imminent or substantial endangerment to health or the environment exists at or near the OHF.  Moreover, the State of California, through the DTSC and RWQCB, has oversight over the remediation and has the scientific understanding and resources necessary to investigate and remediate alleged hazards.  Conversely, the district court has neither the resources nor expertise necessary to properly address the scientific issues presented by an alleged imminent and substantial endangerment to health or the environment.

These concerns are shared by a number of district courts throughout the United States. See West Coast Home Builders, Inc. v. Aventis Cropscience USA Inc., No. 04-2225-SI, 2009 WL 2612380 (N.D. Cal. 2009) ("There are two fundamental problems with plaintiff's RCRA claim [...] [f]irst, the Consent Order already requires GBF/TRC to clean up the groundwater contamination, and that remediation has been underway for years [ ] Plaintiff seeks relief that it is already obtaining outside of this lawsuit."); see also River Vill. W. LLC v. Peoples Gas Light and Coke Co., 618 F. Supp. 2d 847, 854-55 (N.D. Ill. 2008) ( "Unlike the district court, the [agency] has been specifically charged with the responsibility to develop and enforce regulations to implement the environmental laws passed by Congress [ ... ] the district court's handling of this matter would be delayed by years if research and discovery which would be necessary to develop a basic understanding of the [contamination area and hazards presented]."); OSI, Inc. v. United States, 510 F. Supp. 2d 531 (M.D. Ala. 2007) ("OSI has presented no [ ] evidence to suggest that an imminent or substantial endangerment to health or the environment exists on OSI or Government property. Furthermore, the Government is conducting a remediation program in conjunction with ADEM to repair any contamination and resulting dangers that do exist [ ... ] [t]hese two factors together lead the Court to conclude that the Government is entitled to summary judgment."); Davis Bros., Inc. v. Thornton Oil Co., 12 F. Supp. 2d 1333, 1338 (M.D.Ga.1998) ( "[P]laintiff has presented no credible evidence supporting a finding of imminent and substantial endangerment to health or the environment [...] [m]oreover, the proposed remedy of injunctive relief is moot because Conoco has already agreed to remediate the site and pay for any costs associated with the cleanup, and the state is overseeing the cleanup more effectively than the court ever could.  Thus, the RCRA

claim fails on the merits, and is also moot.").

*Id.* at *15.

Boeing argues that it is entitled to summary adjudication for "the same reason[s] as the United States."

### III. <u>LEGAL STANDARD</u>.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless*, Inc., 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and

6

1  supported, the non-movant cannot defeat the motion by resting upon
2  the allegations or denials of its own pleading, rather the
3  "non-moving party must set forth, by affidavit or as otherwise
4  provided in Rule 56, 'specific facts showing that there is a
5  genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting
6  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986)). "A
7  non-movant's bald assertions or a mere scintilla of evidence in his
8  favor are both insufficient to withstand summary judgment." *FTC v.
9  Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant
10 must show a genuine issue of material fact by presenting
11 *affirmative evidence* from which a jury could find in his favor."
12 *Id*. (emphasis in original). "[S]ummary judgment will not lie if
13 [a] dispute about a material fact is 'genuine,' that is, if the
14 evidence is such that a reasonable jury could return a verdict for
15 the nonmoving party." *Anderson*, 477 U.S. at 248. In determining
16 whether a genuine dispute exists, a district court does not make
17 credibility determinations; rather, the "evidence of the non-movant
18 is to be believed, and all justifiable inferences are to be drawn
19 in his favor." *Id*. at 255.

## IV.  DISCUSSION

On April 19, 2010, Boeing moved for summary adjudication on the City's claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq*. Its principal contention was that the Court lacks subject matter jurisdiction over the claim pursuant to § 113(h) of CERCLA.

In its opposition, filed May 10, 2010, the City abandoned its RCRA cause of action with respect to its TCE and PCE allegations.

7

(See Doc. 248 at 2:10-2:12 ("The City will be withdrawing its RCRA claim as to TCE and PCE through an amended complaint, and thus the motion is moot.").  The motion is GRANTED in favor of Defendant Boeing and against the City as to TCE and PCE.  However, the City argues that its RCRA claim survives summary adjudication on a limited basis: a factual dispute exists concerning whether TCP presents an imminent and substantial endangerment under the RCRA framework.

In its reply, Boeing responded that "the Court should dismiss the City's RCRA claim against Boeing for the same reasons that it dismissed Plaintiff's RCRA claim against the United States." Boeing explained:

> The City's claim - in its entirety, including the TCP component – challenges the adequacy of a CERCLA section 104 remedial action on non-federal property and should be dismissed for lack of subject matter jurisdiction under CERCLA section 113(h).  Shortly after Boeing filed its motion, this Court granted the United States' motion and rejected the City's claims that it is not attempting to challenge the cleanup because of 'the presence of TCP in the groundwater.'

(Doc. 271 at 1:27-2:3.)

Boeing further argued that even if § 113(h) did not bar the TCP allegations, "the City has not produced sufficient evidence to permit a factfinder to find the existence of an imminent and substantial endangerment, the City's RCRA claim must be dismissed." (*Id*. at 271:5-271:7.)  In support, Boeing incorporated the arguments and authorities advanced in its related "Reply Memorandum in Support of Motion for Summary Judgment or, Alternatively, Summary Adjudication of Plaintiff's TCP-Related Claims under CERCLA, RCRA, and the HSAA."

8

**Assuming, *arguendo*, that § 113(h) does not bar the City's entire RCRA claim,[3] and that it is not otherwise foreclosed,[4] the**

---

[3] Whether the City's request for relief is a "challenge" to the current remedial action plan was resolved in the April 22, 2010 Memorandum Decision. As stated in the Memorandum Decision, the City's arguments have been rejected by the Ninth Circuit in *McClellan Ecological Seepage Situation ("MESS") v. Perry*, 47 F.3d 325, 330 (9th Cir. 1995) and *Razore v. Tulalip Tribes*, 66 F.3d 236 (9th Cir. 1995). In *MESS*, the Ninth Circuit took a broad view of the scope of § 113(h). There, the plaintiffs made an argument similar to that advanced here: that their RCRA claim was not a "challenge" under § 113(h) because it was not attempting to delay or modify the remedy, but rather only sought to compel the defendant's compliance with RCRA's requirements. *Id.* at 330-31. The Court held that while tangentially related claims, such as those to enforce minimum wage requirements, do not constitute a challenge under § 113(h), the plaintiffs' claim was "far more directly related to the goals of the cleanup itself." *Id.* at 330. The Court also concluded that for "all practical purposes" the plaintiffs were effectively seeking to "improve" the clean up. *Id.* As such, it found that the plaintiff's claim was a "challenge" barred by § 113(h). *Id.*

*MESS*, *Razore*, and *SPPI-Somersville, Inc. v. TRC Companies, Inc.*, 2009 WL 2612227 control the facts of this case. In *SPPI-Somersville*, Plaintiffs contended that the current remediation plan did not address the danger posed by vapor intrusion, and thus that the RCRA injunctive relief was viable. The *SPPI-Somersville* court rejected this argument:

> There are a number of problems with this assertion. First, even if the Court granted the relief that plaintiffs describe in their papers regarding soil vapor, such as ordering TRC to conduct a study of the site-specific soil gas conditions, DTSC would necessarily be involved in that process, and would make the determination as to whether mitigation was necessary.

*Id.* at 15.

The City rejoins that the proposed injunctive relief merely "supplements" the existing cleanup. However, any judicial order adding an additional contaminant necessarily imposes on the currently cleanup and impacts the DTSC and RWQCB. It also raises a number of practical and administrative concerns. *See, e.g., River*

**City's RCRA claim does not withstand a Rule 56 challenge. Specifically, the City's RCRA claim fails because there is insufficient evidence to create a genuine dispute of fact on the "imminent and substantial endangerment" element of 42 U.S.C. § 6972(a)(1)(B). The City's evidence/arguments to support a § 6972(a)(1)(B) finding were analyzed in detail in the June 29, 2010 Memorandum Decision Denying the City's Motion for Reconsideration:**

> Even assuming, *arguendo*, that the City's Rule 59 motion is properly supported, its motion for reconsideration fails because it does not establish the seminal point, i.e., that the disposal of TCP at the OHF may present an imminent and substantial endangerment to health or the environment. The City was required to show more than that TCP exists at or near the OHF airfield. The risk of endangerment from the TCP contamination must be *imminent* for there to be a claim under RCRA. *See Crandall v. City and County of Denver, Colo.*, 594 F.3d 1231, 1237 (10th Cir. 2010) (stating that "[o]ne essential point that Plaintiffs appear to overlook is that although the harm may be well in the future, the endangerment must be imminent.") (citation omitted). Moreover, the City's proffered evidence has failed to raise a genuine dispute of fact as to the seriousness of the risk posed by TCP. *See, e.g., Newark Group, Inc. v. Dopaco, Inc.*, No. 2:08-CV-02623-GEB-DAD, 2010 WL 1342268 at (E.D. Cal. Apr. 2, 2010) ("Absent additional evidence, the mere fact that [plaintiff] has produced such samples does not support a reasonable inference that [the contamination on its Property] presents an imminent and substantial endangerment to health or the environment.") (citations and internal quotations

---

*Vill. W. LLC*, 618 F. Supp. 2d at 854-55 ("Unlike the district court, the [agency] has been specifically charged with the responsibility to develop and enforce regulations to implement the environmental laws [...] the district court's handling of this matter would be delayed by years if research and discovery which would be necessary to develop a basic understanding of the [contamination area and hazards presented].")

[4] Specifically, whether under the primary jurisdiction doctrine, the administrative forum provided by the State of California is the appropriate forum for resolution of the City's claims concerning the cleanup of the OHF. There is also an argument that the City's RCRA claim is moot.

omitted).

The inadequacy of the City's evidence is best demonstrated by the February 2, 2010 deposition testimony of Dr. Sterrett, which the City claims distinguishes this case from *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199 (2d Cir. 2009). At the outset, it is important to note the progression of Sterrett's "expert opinions" during the different stages of the case, i.e., first during expert disclosures, second, during his deposition, and, last, for the City's current motion for reconsideration. Sterrett's original expert report, filed December 30, 2009, contains a brief opinion on TCP, and it is qualified at best: "There are *apparently* at least two sources of 1,2,3-TCP in the vicinity of OHF. One is *probably* on the eastern portion of OHF and the other is between Wells 306 and 63." (See Doc. 191-5, "Sterrett's Expert Report," at pg. 28.) (emphasis added). Critical to the analysis, Sterrett excludes TCP as a contaminant causing an "imminent and substantial endangerment" at the OHF. The expert report provides, in relevant part:

<u>Question</u>: Would the cessation of remedial activities result in an imminent and substantial endangerment to health or the environment?

<u>Opinion</u>: The presence of TCE in groundwater in excess of MCLs results in a situation of imminent and substantial endangerment to heath [sic] or the environment as outlined by the USEPA. This opinion is also supported by the fact that the DTSC has issued an Imminent and Substantial Endangerment Order.

(*Id.* at pg. 27.)

There is no opinion that TCP presents an imminent and substantial endangerment to health or the environment in Sterrett's expert report.

Sterrett's February 2, 2010 deposition testimony is similarly flawed. Although he conclusorily recited § 6972(a)(1)(B)'s "magic words," Sterrett attributed TCP's "substantial and imminent endangerment" to the State's non-binding public health goal. The opinion was also qualified and did not state with specificity the degree of potential exposure to risk to humans and the environment or provide any evidence that anyone was subject to long-term exposure to TCP contamination or that there were realistic pathways of exposure at the OHF:

11

```
 1    Q:   But my question has to do with whether TCP in
           groundwater poses an imminent substantial
 2         endangerment, and I don't think you've
           answered that one yet.
 3
      A:   I would have to say yes, just because I think
 4         if we let it go, the State of California
           would require capture of it.
 5
      Q:   What's the basis of that opinion?
 6
      A:   That because of its low public health
 7         notification.

 8    Q:   But the low public health notification only
           applies to water that's being put into the []
 9         drinking system, correct?

10    A:   That is correct.

11    Q:   So if the TCP is just left in the groundwater
           below the surface and is not being removed to
12         be put into drinking water, there would not
           be an imminent substantial endangerment,
13         would there?

14    A:   My understanding is the State of California,
           you know, just about all groundwater is going
15         to be considered drinking water.  So, you
           know, having it just migrate, I would suspect
16         the State may see it differently.

17    Q:   But it's -- well, you don't recall the RAP,
           do you?
18
      A:   Well, the RAP was written, I think, before --
19         before the TCP was probably an issue.  I
           don't recall it being in there, but I'm not
20         a hundred percent sure.

21    Q:   So I guess you would say that you believe
           that perhaps the State of California may --
22         may believe that the migration of TCP may
           pose an imminent substantial endangerment to
23         [...] the health or the environment?

24    A:   Yes.

25   (Doc. 256-14, Dep. of R. Sterrett, at 12:19-15:4.)

26   This review of Sterrett's expert report and his
     deposition testimony demonstrate that the City's TCP
27   arguments necessarily fail.  Although the City's expert
     recited § 6972(a)(1)(B)'s "magic words," the deposition
28   testimony adds nothing beyond the fact that TCP levels
```

exceed California's non-binding public health goals. It lacks the factual detail and specific exposure evidence found sufficient in *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1020 (10th Cir. 2007) and *California Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930 (E.D. Cal. 2003), two cases relied on by the City. *See Burlington,* 505 F.3d at 1020 (finding genuine issues of material fact existed on plaintiff's RCRA claim based on expert testimony defining the specific carcinogenic effect on industrial outdoor workers (based on soil concentrations), that materials "also pose a threat to pets and wildlife as they are completely exposed," and that the "presence of this exposed material and its eruptive nature constitutes a potential threat to stormwater runoff and waters of the United States."); *see also California Dept. of Toxic Substances Control,* 298 F. Supp. 2d at 981-82 (relying on the DTSC's multiple scientific reports by qualified experts to hold that a triable issue of material fact existed on the issue of imminent and substantial endangerment.). Additionally, Sterrett relied on DTSC's Imminent and Substantial Endangerment Order, dated October 31, 2006, to support his expert opinion. However, that order did not mention TCP and the DTSC has not since issued an "Imminent and Substantial Order" for TCP. The City does not provide a single case citation where such an order was analyzed and applied to support a "substantial and imminent endangerment" opinion in this context.

The City's remaining evidence is controlled by *Crandall v. City and County of Denver, Colo.*, 594 F.3d 1231, *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, and *Newark Group, Inc. v. Dopaco, Inc.*, 2010 WL 1342268. Those cases hold that absent additional evidence, the mere fact that a plaintiff has produced contaminant samples exceeding non-binding levels does not support a reasonable inference that the contamination presents an imminent and substantial endangerment to health or the environment. *See, e.g., Metacon Gun Club*, 575 F.3d at 212-13. Specifically, the *Newark Group, Inc.* court stated: "evidence that certain samples taken from the [the property] exceeded [government] standards simply provides an inadequate basis for a jury to conclude that federal law, specifically, [RCRA's citizen suit provision, § 7002(a)(1)(B),] [42 U.S.C.] § 6972(a)(1)(B), has been violated." 2010 WL 1342268 at 7. The City submits evidence that TCP was detected at or near the OHF, including Well 70, but at levels it essentially admits are far from immediate. The City's evidence lacks the "imminence" or "threat" present in *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 and *California Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F. Supp. 2d 930. This negates any "substantial and imminent" finding under the

13

> RCRA framework [...]
>
> [T]he City has not shown a genuine dispute of fact on whether TCP presents an imminent and substantial endangerment at the OHF. On the current record, its evidence is distinguishable from those cases finding a colorable claim under 42 U.S.C. § 6972(a)(1)(B), including *Burlington N. & Santa Fe Ry. Co. v. Grant* and *California Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp*. The City also understates the prospect of establishing a second cleanup - of an unregulated contaminant - on an existing remediation site managed by several state agencies.

(Doc. 321 at 26:2-34:11) (footnotes omitted).

This language applies with equal force to Boeing's current motion.[5]

Under 42 U.S.C. § 6972(a)(1)(B), "[a]n endangerment can only

---

[5] Additionally, in Boeing's related "Reply Memorandum in Support of Motion for Summary Judgment or, Alternatively, Summary Adjudication of Plaintiff's TCP-Related Claims under CERCLA, RCRA, and the HSAA," it argued that Sterrett's TCP opinion violated Rule 702 of the Federal Rules of Evidence for two reasons: (1) Sterrett is a "hydrogeologist with neither training nor experience that qualifies him to render an opinion about the health and environmental effects o TCP exposure"; and (2) Sterrett provides "no facts to support his conclusory statement [and] no explanation of any method, let alone a reliable method, to arrive at the conclusions." (Doc. 275 at pg. 11, fn. 4.) Under Rule 702 if the basis for an expert's opinion is clearly unreliable, the district court may disregard that opinion in deciding whether a party has created a genuine issue of material fact. *See Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 596 (1993) (if "the trial court concludes that the scintilla of [expert] evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to ... grant summary judgment"). Relevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

be 'imminent' if it 'threatens to occur immediately.'" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996) (quoting Webster's New International Dictionary of English Language 1245 (2d ed. 1934)). "[T]his language 'implies that there must be a threat which is present now, although the impact of the threat may not be felt until later.'" *Id.* (quoting *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994)). To show an "imminent and substantial" threat, the plaintiff must do more than establish the presence of solid or hazardous wastes at a site. *Foster v. United States*, 922 F.Supp. 642, 661 (D.D.C. 1996). Instead, "endangerment must [be shown to] be substantial or serious, and there must be some necessity for the action." *Price*, 39 F.3d at 1019. Also, the fact that remedial activity in accordance with CERCLA has commenced at a site greatly reduces the likelihood that a threat to health or the environment is imminent. *See Christie-Spencer Corp. v. Hausman Realty Co., Inc.*, 118 F. Supp. 2d 408, 419-23 (S.D.N.Y. 2000). Even viewing the evidence in a light most favorable to the City, it has failed to create a genuine dispute of fact on the "imminent and substantial endangerment" element of 42 U.S.C. § 6972(a)(1)(B). The City has not met its Rule 56 burden. Boeing's motion for summary judgment is GRANTED against the City on the City's RCRA claim.

*//*
*//*
*//*
*//*
*//*
*//*

## V. CONCLUSION.

For the foregoing reasons:

1. Boeing's motion for summary judgment or, alternatively, summary adjudication of the City of Fresno's RCRA claim is GRANTED.

Boeing shall submit a form of order consistent with, and within five (5) days following electronic service of, this memorandum decision.

IT IS SO ORDERED.

**Dated:   June 30, 2010**              /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE